Our final case for argument today is 23-1823, Lesko v. United States Mr., is it Corvillis? Corvillis, yes. Corvillis, got it. Please proceed. Good morning, Your Honors, and may it please the Court. My name is Timothy Corvillis, and I represent Appellant Jillian Lesko in this case. As background for the audience here, Ms. Lesko was a registered nurse who worked for the government, specifically the Indian Health Service. And this case concerns claims by her that she and other similar workers were not paid properly by the government, specifically, and most importantly, during the COVID pandemic when hospitals and nurses were stretched to their limits. They didn't get overtime. That's right. Claims for overtime and also premium pay for nighttime, holiday, weekend work. This appeal is made on a few grounds, but first among them is what I think is a very important and timely issue that concerns whether and how the judiciary goes about deciding how a congressionally enacted statute can or should be modified by an agency-implemented regulation. This is a very fitting topic, I think, for an academic study, perhaps the most purely legal issue that the Court is considering today. And raises LOPR, right? That's right. That's a big deal in this case because you have to get past Doe. We have a prior decision that relied for Chevron purposes, relied on an agency interpretation that you don't like. That's exactly correct, Your Honor. We have a case law history spanning over 60 years, since 1956, when a predecessor to this Federal Circuit Court, the Court of Claims, first looked at this issue. Anderson, right? Anderson. Yep. And let me define what the issue is for, I know the Court's familiar with it, but for the audience. We have, on the one hand, a statute, Title V, Section 5542, which authorizes overtime compensation for Federal employees that is, quote, officially ordered or approved. The Courts, as LOPR now has commanded post-Chevron deference, exercised their independent judgment as early as 1956 to define what that means and looked at the issue of whether it includes inducement. Overtime work that is officially ordered by way of inducement, meaning expected, required, encouraged to be performed. But on the other hand, we have a regulation implemented by the Office of Personnel Management, which says you cannot get overtime compensation if the work is not officially approved in writing. That's 5 CFR 550.111 subsection C. I intend today, during the oral argument, to focus primarily on the viability of that inducement theory. I'm happy to answer whatever questions the Court may have about the other issues raised in the appeal. We think they are adequately addressed in the papers. I think we don't have much to add. I want to note that this case comes to the Court at the pleading stage. The question here is not an argument by the government that inducement was not sufficiently pled. The question is, is it a viable theory of recovery for overtime compensation under the statute? So if we prevail on this appeal, it does not mean that we'll prevail on the merits. What is the difference between, is there any difference between this case and Doe? Because we have, you know, you started by saying for 65 years the predecessor to this Court in Anderson said inducement falls within the definition of officially ordered or approved. But then Doe came along. And what did Doe do? Well, Doe held that the writing regulation was enforceable. And I think the key difference here, aside from the fact that different types of employees are involved, is that we would respectfully submit Doe was wrongfully decided by the Federal Circuit. And the errors in Doe were And this panel can't overturn the Doe decision. Well, actually, Your Honor, that's not true. Because the reason that Doe was wrongfully Okay, put your pen down. Put your pen down. Don't wave it at me. The reason that Doe was wrongfully decided is because Doe did not have the power to overturn Anderson. In Anderson, the predecessor to this Court, which this Court cannot overturn unless it's en banc or there's intervening Supreme Court precedent, looked at this issue. And specifically, they said that the statute has a mandate to pay for overtime compensation, including that is induced. It said that that mandate is overriding. And in the facts of Anderson, which involved a sort of similar situation, different types of workers, patrol border officers who similarly had to work 24 hours a day Well, hold on a sec. The one thing is, in Anderson, there wasn't a writing requirement. Was there? No, Your Honor. That's not correct. There was a writing requirement. There was a writing requirement. There was a regulation. There was a regulation. That is what Anderson was about, was invalidating that. It was an executive order regulation. Here's the thing, though. It's a big ask to ask us to conclude that an earlier panel decision from this Court made a ruling that it lacked authority because it conflicts with an even earlier panel decision. Doesn't Mercier do some work for you? Let me just finish this. I didn't mean to interrupt. It's our obligation to try to reconcile our panel decisions and work as hard as we can before we were to reach such a conclusion. And maybe one way to do that here is that Anderson was pre-Chevron. So Anderson came out in the 1950s or 60s. I can't remember. And then Chevron comes out in 1984. And then Doe, in 2004, says we're living in a Chevron world. And so Anderson didn't expressly say that this statutory term is unambiguous and clear. It just provided its interpretation as the Court giving perhaps just the best reading. And then what Doe did post-Chevron was say, well, we're going to revisit this because now we're supposed to defer to reasonable regulations of any ambiguous statute. And the Doe Court concluded, yes, this statute is ambiguous, and so now we're going to look at the regulation. Yes, the regulation requiring writing for an approval is reasonable, and so therefore we're going to uphold what happened in Doe. So if we read those two opinions together like that, then we wouldn't say that Doe was just void ad venitio as a ruling. No, Your Honor. I mean the circumstances have changed. The case law concerning this issue spans decades from 1956 and Anderson pre-Chevron, including a number of additional pre-Chevron. I guess what I'm trying to ask you to focus on is rather than getting us to say this court goofed up really badly in Doe and did something that it had no authority to do, why is it that Loper, Loper Bright, by overruling Chevron, somehow allows us to just dismantle Doe to allow you to get back to Anderson? I think that's exactly correct, and the court shouldn't rule that way. Right, but could you give us some reasoning as to that? Because there's a paragraph very late in the Loper Bright opinion that seems to send a strong signal that its decision overruling Chevron shouldn't be understood as creating an open hunting season on all earlier decisions that ever relied on Chevron. And, in fact, there's a principle of statutory stare decisis that presumptively makes all of that still good law, and the mere fact that those earlier cases relied on Chevron alone is not enough to take down those earlier holdings. So now the next question is what do you have, aside from the mere fact that Doe relied on Chevron, that allows you to say, hey, you can get rid of Doe and go back to Anderson? Well, I think Your Honor has answered his own question. Not to my satisfaction. Let me elaborate. Our appeal here was fully briefed prior to the decision in Loper. Our arguments did not consider that initially because the case had not yet been decided. Our view is that Doe was wrongfully decided for the reasons we say in our papers, but in addition to that, now we know that Doe, which was premised on Chevron deference, and now we know that Chevron deference is no longer at play. However, as Your Honor noted, at the end of Loper, the court cautions against upending stare decisis. But what it also says is that the mere fact that a court afforded Chevron deference to a regulation is not a reason to overturn it. The facts here are not mere. The court in Loper, the United States Supreme Court, said that courts should exercise their independent judgment in saying what the law is. That's happened here. It happened at Anderson. It happened for decades post-Anderson in cases predating Chevron and post-dating Chevron. A number of cases post-Chevron where the courts continued to apply the rationale from Anderson and invalidated writing regulations as contrary to the statute. It was only in Doe, which was an anomalous case in the history of these cases, where the court, relying on Chevron deference, chose to uphold the writing regulations. But the Doe decision is a well-established 20-year-old decision. So it's not something that we can just so easily step aside. And, you know, I'm concerned. I have a question. You say well-established, but what about Mercier? What do we do with that?  What do we do? We've got, like, all these Federal Circuit and court of claims cases that are sort of at odds with each other, seemingly. That's right. And, you know, footnote, this is why this is quite an academically interesting issue because this court, I believe it's the first time this court or any Federal Circuit court I don't think anybody's ever orally footnoted. And just to be clear, if your argument's only in a footnote, we don't even read it. So don't footnote yourself and keep talking. My point is that this is the first time the Federal Circuit or I think any circuit has had an opportunity to not just address the impact of low-error, but in a context where there's a very long history of seemingly conflicting opinions. To Judge Stoll's question earlier, Mercier does a lot of the work that Your Honor, Judge Schen is asking about. It identifies the error in Doe. Chief among them that Doe did not have the authority to overrule Anderson in its determination of the scope of the statute. It said that. It said that. You're right. It really took Doe to task. But isn't that fairly characterized all as dicta? Because at the end of the day in Mercier, unlike in Anderson, there was no writing requirement of that, I'm sure. There was no regulation. So in Mercier at the end, didn't they distinguish Doe? I mean, yes, they took it to task. They said it's awful. It's awful in all these ways. But at the end of the day, they distinguished it, didn't they? I didn't see them saying, we don't follow Doe because Anderson preceded it. Mercier, as this Court has noted, its intention to do here is to reconcile its case law, went to great lengths to not contradict Doe and to reconcile itself with Doe. And it is true that in Mercier, which was a Title 38 case, there was no regulation specific to Title 38. But what is also true is that the Court looked at the Order or Approved Language in Section 5542 of Title V, compared it to this exact same statutory language in Title 38, which was at issue in Mercier, said that the Title V language was subject to decades of this writing regulation, and said that the Order or Approved Language should have the same meaning. So we are left with the task instructed from Loper for this Court to say, what does the statute mean? And does it encompass an inducement theory? So just to be clear, Mercier says, it says that Doe doesn't overrule the interpretation first set forth 70 years ago in Anderson, right? Correct. In fact, it says Anderson remains good law on the topic of what the statute means. It also said Doe remains good law. Well, it said that it was not undermining Doe's Chevron deference afforded to the regulation. But now we have an intervening Supreme Court precedent that has disregarded, or rather overruled, the Chevron deference framework. And the Court is left with the task of, as Loper instructed at the end, what do you do when a case relied previously on Chevron deference? But that's not the mere argument that is being made as to why it should be appended. All right, Mr. Corbillis, do you want to save some time for rebuttal? Yes, Your Honor. I just have one quick question about your sub-delegation argument about converting over to Title 38. Do you want this Court to actually analyze all of these various documents and get to the merits of what's the correct understanding of the sub-delegation? Or is it your view that it was impermissible for the lower court to even be considering these documents at a motion-to-dismiss stage, and so therefore, for that reason alone procedurally, the district court's decision needs to be appended? Which one is it? It's the latter, but also it's the fact that we don't have the information about how the delegation was properly documented. The information that's been provided is not complete. Thank you. Okay, thank you. Is it Ms. Geddes? Yes, Geddes. Geddes, thank you. Good morning, Your Honors. It may please the Court. I want to start by briefly apologizing. In my brief, I did make an error and represent that Anderson... Yes, page 15, yep. Yes, so there was a writing requirement of Anderson, but the situation here is on their surface, it looks like some of these cases are in tension with each other or that there may be conflicts or confusion here, but that's not the case once we delve into the details. This Court was actually extremely thorough in its opinions in Doe and in Mercier, and there's no conflict here. I think the issue is that there were two separate facts. Just out of curiosity, you don't think that the panel in Mercier had a problem with Doe and articulated it? You don't think there's any conflict between any of the language in those two opinions? No, Your Honor, and if you'd like to point me to a specific aspect or talking about it, but Mercier said that the Anderson holding, as far as Anderson's interpretation of the phrase officially ordered and approved, remains good law. But Anderson... So how could Doe have said what it said, that, oh, the statute's ambiguous, we don't know what the right meaning of it is, when Anderson, many decades earlier, had proclaimed what the very interpretation of officially ordered or approved is, which is, you know, there's no writing requirement required. Yes, and Anderson reached that conclusion after setting aside the regulation that created an in-writing requirement. In Anderson, the court believed that the agency did not have the authority to pass regulations that constrained the substantive rights in the statute. But Doe very explicitly... And then stepped forward and then did its duty as a court, which was to provide an interpretation of the statute. Yes, but at that stage, that was when there was no agency interpretation. But there was a regulation. There was a regulation, yes. That's an agency interpretation. Right, I'm saying there were... So what Doe... Doe found that that aspect of Anderson's decision was no longer good law, and the reason Doe did that was because there was an intervening authority by the Supreme Court in Schweiker v. Hansen. Wasn't the intervening authority Chevron? That was another intervening authority, but that's why we need to sort out these two aspects of Anderson. First, there was Anderson's view that an agency could not pass regulations that constrained the rights established by the statutes. That's what Doe found to no longer be good law in light of Schweiker v. Hansen. The next part of Anderson, having set aside that regulation, was determining in the first instance what ordered and approved means and concluding that that language itself, with no interpreting regulation, having already set that regulation aside, did not have a writing requirement. So Doe very explicitly says that that aspect of Anderson is no longer good law. And Doe remains binding on this court. As the court has noted, Loper says that past cases, just because they relied on the Chevron framework, that does not mean they are no longer good law. They are still entitled to... At the same time, the Supreme Court in Loper v. Bright suggested there can be opportunities or reasons or bases why to revisit old interpretations that relied on Chevron and overturn them. And what do you think those grounds are? So I think the court's referring to the sorts of special circumstances where stare decisis might be overcome. Right. Well, first of all, there's no reason that Loper would mean that this court can now, without sitting on bonk, decide that some interest outweighs stare decisis. But in this case... I'm asking you a question, though. The Supreme Court left it open. There can be reasons, there can be grounds to revisit an earlier precedent that relied on Chevron. So what is the government's view of what those kinds of grounds or bases are or can be? I'm not sure what sorts of special circumstances might justify overcoming stare decisis. It varies from case to case. But Ms. Lesko has not made any argument that any special justification is present in this case. What about the... I heard an argument being made that the existence of Anderson before, and this is kind of different than many other scenarios, and that you've got an interpretation of statutory language, and then there's a later interpretation, Doe is later in time. What precedent do we follow, by the way, as a court? For the students here in the room, what precedent would we follow if we had two conflicting precedents? Would we follow the older one or the newer one? You would follow the older one. But in this case, Doe could not have been more clear that it found Anderson to no longer be good law following Hansen. No, but it... What about, it didn't... Not with respect to a situation where there wasn't an agency determination that was afforded Chevron deference, right? Well, prior to its... Prior to reaching the Chevron analysis... I mean, how could Doe overrule Anderson? Doe did not. And how did it do so narrowly? The Supreme Court overruled Anderson in Schweiker v. Hansen. Expressly? No, but this court in Doe, which is binding precedent, found that the Supreme Court had overruled that aspect of Anderson. How do you square that with Mercier? Do you disagree with Mercier's discussion? Because Mercier says that Doe allowed the interpretation in Anderson to exist absent a situation where there was a regulation being afforded Chevron deference, right? Yes. Yes, I don't disagree with Mercier. Mercier, as I understand it, says that where a regulation has set already... Okay, so just to be clear then, Doe hasn't overruled Anderson? Doe did not overrule Anderson. Doe simply recognizes that the Supreme Court had overruled the aspect of Anderson that believed an agency could not pass regulations that set constraints on the statutory rights. So going back to Anderson, there was a regulation at that time that had a writing requirement for approval. And that aspect of Anderson said, well, there's no way you're allowed as an agency to put this kind of procedural requirement that curbs and cabins in the substantive rights of somebody. And that aspect is what the Doe court said, the Supreme Court opinion overruled of Anderson. But Doe didn't say anything that Anderson's statutory interpretation, putting aside the regulation and just looking at the statute and its interpretation that it's wrong to read in a writing requirement of the statute. That was not overruled at all. Precisely. And I think Mercier lays that out very well. So there is no facial conflict between these cases. There's just a bit of nuance that is a little bit confusing at first. And yeah, Anderson, it predated, most importantly, Hanson. But as this court has noted, it also predated Chevron. So I guess it comes down to why is the other side wrong to say that maybe this case is an example of one of those special circumstances that Loper Bright was suggesting and hinting at, where it is an opportunity to revisit the Doe-Chevron reliance opinion, given the fact that there was a many decades earlier precedent of what a straight statutory interpretation is of officially ordered or approved. And given that backdrop, it's appropriate now to take a second look at Doe and conclude its reliance on Chevron is not really controlling anymore. Yeah, there are several reasons that that is not compelling. First of all, there was a line of cases predating Anderson where the courts did strictly apply the writing requirement. So it's not as though everything was uniform up until Doe. Second of all, as this court has recognized, Doe has been the law for 20 years. Congress has had an opportunity to... I guess this is exactly the situation. The situation is the cases were all over the place. You had Anderson. You had some other cases that went a different way. Then you had Doe. Then you have Mercier, which respectfully, I think, really throws some curveballs at Doe. But anyway, you have all these back and forth, back and forth. Why isn't that exactly the kind of case that Loper anticipates creating a vehicle for reconsidering if one of those decisions along the way relied almost exclusively and entirely on Chevron for overturning all of the other decisions? Why isn't that exactly the case where stare decisis is not really the same concern because you have cases on both sides over time all over the place? Why isn't that right? Why isn't that exactly... They did use the word mere in that paragraph for Loper. Mere reliance on Chevron deference. Here we have so much more. We have all of this question about which way stare decisis actually cuts because I think there were more years with Anderson than there were with Doe. I don't know. What happens? Well, the main thing that developed since Anderson wasn't the Chevron framework for interpretation. It was the question of the agency's ability to set regulations to administer their statutory mandates. Perhaps the most important language in Loper isn't just its language about stare decisis. It also acknowledges the distinction between mere interpretations and agencies exercising their delegated authority to pass substantive regulations. What the court says in Loper at 2263, it acknowledges that Congress often, quote, delegates to an agency the authority to give meaning to a particular statutory term. Let's just forget about everything else.  Officially ordered or approved. That's what Congress said. They said people get overtime compensation when it's officially ordered or approved. Now, suppose in this case, and I think the fact is exactly right, so we'll call it a hypothetical. Suppose in this case, this nurse was ordered by her supervisor under threat of termination during COVID to remain on the job and work overtime. And he even told her, and you're going to get paid for it. That's not officially ordered or approved under the statute. She was forced to stay under threat of termination in an emergency and did so. She doesn't get overtime pay. You think Congress intended to delegate to the agency the ability to say, no, no overtime for you. Obviously, that would be a very extreme case. But yes, Congress delegated to the agency the authority to pass laws. Does it contradict the clear language of the statute? It does not contradict the language. It simply sets regulatory requirements. This court recognized... This isn't a regulatory requirement. Ordered or approved, clearly, the plain language of that could include both verbal and written, couldn't it? Yeah, and that's what this court found in Anderson. So the plain language of the statute afforded this person and all similarly situated employees a substantive entitlement to pay if they're forced to work overtime. But you're saying the agency is allowed to take back some of what Congress gave? Yes, that's exactly what the Supreme Court held in Hansen, and that's exactly why this court... Hansen wasn't a writing case. In fact, by the way, just to be clear, at Doe, you guys had no explanation for Hansen. Hansen came out of the blue, and you couldn't point to any language in Hansen that supported the outcome that Doe ultimately adopted. You all were your own worst enemy in that case, but Judge Dyke came along and saved you. So what is it about Hansen that says that the government can take away Congress's entitlement to employees for overtime? Bill, Hansen was about the Social Security Act. It wasn't about overtime, but the point was that the agency passed regulations to administer the Social Security Act that set procedural requirements that were not present in the statute itself, and the Supreme Court found that it was allowed to do so, and in Doe, before even touching the Chevron analysis, this court said that that aspect of Anderson had been overruled, and Doe discussed the fact that the statute at issue here gave the agency the right to not only interpret the terms of the statute, but to pass substantive regulations. That language in Doe had nothing to do with the Chevron analysis, and has not been changed. You'd also found that the statute was ambiguous, right? Yes. And how do you reconcile that with Anderson, which didn't seem to have any problem interpreting the same term? I don't think Anderson ever had the... There are reasons to specifically consider whether the statute was ambiguous because it wasn't according to Chevron. But they interpreted it. They interpreted it, yes. Doesn't, you know, if you interpret something, doesn't that mean that you think that it's not ambiguous? How can you interpret something if it's ambiguous? Well, the court has to interpret it whether it considers it ambiguous or not. So the only time you get to the question of whether something is ambiguous is because you've used all your canons of construction, and then you still can't figure out what it means, right? Yeah, I suppose that would usually be the case. That is usually the case. And so, therefore, it does seem inconsistent, right? I can't say whether the Anderson court would have found the statute to be ambiguous. It ultimately ruled on its interpretation, but it had no choice other than to do so. But you and I both agreed a few minutes ago that the plain meeting of officially ordered or approved included both writing and oral orders. So where is the ambiguity? Where is the ambiguity if we both agree the plain meeting includes both? Well, it's not about ambiguity. Loper made clear that when an agency is exercising its delegated authority to pass regulations to administer its statutory mandate, the question is not the Chevron question about ambiguity. The question, and I'm quoting Loper here, is simply whether the agency has engaged in reasonable decision making within the boundaries of the delegated authority. That's the question. But only if that delegated authority is clear that the agency in this case is entitled to, it seems according to you, contradict the express language of the statute. If that statute is not ambiguous, I don't see what authority you have for the proposition that you're allowed to limit an unambiguous statute. Because that's why this court found after Hansen that agencies could do just that. They can set procedural requirements for carrying out the statutory mandate so that these are administrable. And the Doe Court also got into the reason why it was reasonable for OPM to do it in this case, which is that the alternative would be that the government would have no choice but to pay employees, the exempt employees who are getting high levels of pay for work that they do sometimes on their own schedule, that they could just simply just choose to come in early or stay late and then demand payment from the government and the government won't be able to protect itself from liability. That would be a question of inducement. That would go to whether they were in fact induced. If they simply chose to work late or stay over, they wouldn't be induced. We have a construction that includes inducement. It includes inducement unless there is a valid regulation that has the force of law, as there is in this case under Doe, where, and again, the question under LOPR is whether the agency engaged in a reasonable decision making in setting the constraints for the rights that it was regulating. Okay, thank you, Ms. Geddes. Let's let Mr. Corvallis have a little bit of rebuttal time in two minutes. And you can have three if you need them because she went over a minute and a half, so give them three minutes. I'll be brief. Your Honors, our position is not that agencies are without the ability to impose some procedural requirements, but a procedural requirement that completely undermines the breadth of the statute, there's no case that says that's okay. In Doe, when they relied on Schweiker v. Hanson and OPM v. Richmond to say that that was somehow intervening authority that undermined Anderson, those cases involved totally different statutes with totally different breadth. But what was the meaning of why Doe invoked Hanson? It seems to be that it's okay to put this kind of procedural requirement on officially ordered or approved. Isn't that the whole point of why Doe talked about Hanson? The error that we identify in Doe on that issue is that they failed to account for the already existing binding interpretation of the breadth of the statute and did not account for how the regulation completely undermined that. That's another argument for you asking this panel to overturn the Doe panel. And when we need to be doing that in bank, I would think. As I said in my initial argument, Your Honor, I think that is a more complicated question than that because of Anderson and because of Doe's non-ability to overrule Anderson in the first place. I guess I'm trying to understand the government's argument. Do you have to get around both the Chevron reliance analysis in Doe and also a Hanson reliance in Doe? There's actually two different hurdles you've got to answer for from Doe. Perhaps two, but they ultimately boil down to the same question which is, is the agency's exercise a reasonable thing to do in light of the statute's breadth? And our position is that it is not. It cannot and should not be the law of this country that work that is expected to be performed, required to be performed, where people could die if you don't perform it, where you're subject to discipline if you don't perform it, that you don't get paid not just overtime, but in this case, even basic rates of pay, which we were not allowed leave to amend to even claim that absent written authorization. And the court lamented the result here at the end of its order, saying essentially that it was unjust and it was a very difficult situation but that these regulations required it. We would ask the court to reverse that. And... Feels like a good place to end, doesn't it? Yeah, I think so. Alright. Thank both counsel. Thank you very much. Appreciate it.